**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

BRIAN JONES                                    *

        Plaintiff,                          *

    v.                                          *          CIVIL NO.: SAG-20-2714

MARYLAND DEPARTMENT OF                         *
PUBLIC SAFETY AND
CORRECTIONAL SERVICES, *et al.*                *

        Defendants.                         *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE**
**ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

      Defendants, Secretary Robert L. Green and Warden Casey M. Campbell, by their attorneys,

Brian E. Frosh, Attorney General of Maryland and David W. Ryden, Assistant Attorney General,

in support of their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, file

this Memorandum of Law and state as follows:

**I.      INTRODUCTION**

      Plaintiff is a Division of Correction inmate presently housed at the Roxbury Correctional

Institution ("RCI") in Hagerstown, Maryland. In his Amended Complaint filed September 21,

2020, Plaintiff alleges negligence, as well as deliberate indifference to medical care in violation of

42 U.S.C. § 1983. ECF No. 3-1 at p. 1. DPSCS, [1] Secretary Robert L. Green ("Secretary Green"),

and Warden Casey M. Campbell ("Warden Campbell") are named in the Amended Complaint in

Count I (Negligence), Count II (Negligence/hiring, training, retention and/or supervision), and

---

[1] A Motion to Dismiss or, in the Alternative, Motion for Summary Judgment was filed on behalf of DPSCS by undersigned counsel on February 26, 2021. ECF No. 13.

Count III (Deliberate indifference in violation of the 8th through 14th Amendments). *See Id.* at pp. 5-11.

He seeks ten-million dollars ($10,000,000.00) in damages against all Defendants jointly and severally, attorney's fees, costs, and expenses. *Id.* at pp. 8-9.

## II.   FACTUAL BACKGROUND

Plaintiff alleges that on July 29, 2018 he complained of difficulty breathing and requested to be seen by medical at RCI. *Id.* at ¶ 10. He claims, among other things, that he suffered an asthma attack, requested help, and was ignored for hours. *Id.* at ¶ 14. Plaintiff's stated injuries include concussion, permanent brain damage, complete paralysis, dependence on catheters and colostomy bags, wasting, muscular atrophy, declination of organ function, and subjugation to ongoing respiratory infections and complication. *Id.* at ¶ 15. The injuries are alleged to be a direct and proximate result of inactions by the Defendants. ECF No. 3-1 at ¶ 1. His Amended Complaint also alleges that subsequent medical care was inadequate leading to additional physical and economic injuries. *Id.* at ¶¶ 16-17. Plaintiff states that he continues to suffer neurologically, mentally, and physically as a result of the incident, and that he remains in a vegetative state. ECF No. 3-1 at ¶¶ 1, 17.

Warden Campbell states under oath that he RCI Warden on December 5, 2018. *See* Exhibit 1 at ¶ 3, Declaration of (Ret.) Warden Casey M. Campbell, dated April 21, 2021. Prior to being named Warden of RCI he served as Warden for the Jessup Correctional Institution ("JCI") between January 17, 2018 until transferred to RCI on December 5, 2018. *Id.* at ¶ 4. Warden Campbell further states that he did not hire, train, or supervise correctional employees at RCI prior to July 29, 2018. *Id.* at ¶ 5. Warden Campbell was not aware of any medical complaints by Plaintiff prior to or on July 29, 2018, nor was he aware that Plaintiff suffered from asthma. *Id.* at ¶ 6. He also did not interfere with, hinder, or delay medical treatment or care to Plaintiff in any way. *Id.* at ¶ 7.

### III.    STANDARD OF REVIEW

#### A.  Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the Plaintiff. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *Ibarra v. United States*, 120 F.3d 472 (4th Cir. 1997). Such a motion should be granted when the Plaintiff has failed to plead facts that plausibly suggest that he is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Indeed, the Plaintiff must make allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). The court, however, need not accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

#### B.  Motion for Summary Judgment

A motion for summary judgment may be granted if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256.

3

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324. However, "a mere scintilla of evidence is not enough to create a fact issue." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. N. Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966) *aff'd,* 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). Based upon this standard, the pleadings, and exhibit, the Defendants are entitled to summary judgment.

## IV.   ARGUMENT

### A.  Plaintiff has failed to satisfy the minimum requirements for a claim.

This Court should dismiss the complaint outright because its claims fail to satisfy the minimum requirements for a claim as set forth in two directly applicable Supreme Court precedents. They are *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), which reiterate threshold requirements concerning sufficiency of pleadings.

As *Twombly* expounded, and *Iqbal* confirmed, the standard of sufficiency for federal pleadings "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint must pass a plausibility test that "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. Though Federal Rule of Civil Procedure 9 imposes no "hyper-technical" pleading

requirements, it also "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Instead, Rule 8 "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it." *Twombly,* 550 U.S. at 555 n.3 (quoting 5 Wright & Miller, Federal Practice and Procedure § 1202, at 94-95 (3rd ed. 2004)). Under these standards only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal,* 556 U.S. at 679. Thus, in cases like this one, where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 683.

Plaintiff alleges insufficient facts to raise his allegations to the level of plausibility that *Twombly* and *Iqbal* require. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Instead of meeting the standard that *Twombly* and *Iqbal* establish, Plaintiff has constructed his complaint out of bare legal conclusions. He alleges facts of the July 29, 2018 medical emergency bereft of any action by Secretary Green and Warden Campbell, and significantly, any evidence on their part of negligence, negligence in oversight, and deliberate indifference to his medical condition. Warden Campbell's statement under oath is significant in that he was not warden of RCI prior to and on the date of Plaintiff's medical emergency, and as such could not be held accountable for Plaintiff's claims. If he has a plausible claim at all, it is not against Warden Campbell who was not at or managing RCI on or before July 29, 2018. Additionally, he fails to state a plausible claim against Secretary Green in such an unadorned complaint without factual

content. These allegations are inadequate under *Iqbal*, which rejected as insufficiently bare and formulaic a similar allegation that defendants "agreed to subject [the plaintiff] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin." *Iqbal*, 556 U.S. at 680 (internal citations and changes omitted). Plaintiff also offers no factual support for his conclusory allegation that the defendants acted negligently and deliberately indifferent in the three claims. That is, Plaintiff states no specific "circumstances, occurrences, and events," *Twombly*, 550 U.S. at 576 n.3, attributable to the Defendants to support his bald allegations of constitutional derelictions. A court may not properly credit such actually unsupported legal conclusions as true. *Iqbal*, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inappropriate to legal conclusions."); *Twombly*, 550 U.S. at 555 (plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Accordingly, this Court should dismiss the suit as to these Defendants.

**B. No liability unless personal participation**

There is no *respondeat superior* liability under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 677(2009)(an official "is only liable for his [] own misconduct."*); Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Therefore, supervisory correctional officials can be held liable only for their own personal wrongdoing or for

supervisory actions that themselves violate constitutional norms. To establish supervisory liability in a § 1983 action, the Fourth Circuit has held that it must be evidence showing:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994). *See also Slakan*, 737 F.2d at 373. In order for liability to exist under § 1983, there must be personal involvement by the defendants in the alleged violation. *Shaw*, 13 F.3d 791. *See also, Vinnedge*, 550 F.2d at 928; *Rizzo*, 423 U.S. at 370-71.

Supervisory liability is "determined 'by pinpointing the persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw*, 13 F.3d at 798 (quoting *Slakan*, 737 F.2d at 372-73).

 "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). The Seventh Circuit explains that a prisoner's litigation tactic of "working down through [the Department's] organization chart" alleging that "anyone who knew or should have known" of his complaints, "and everyone higher up the bureaucratic chain, must be liable" for deliberate indifference to a serious risk of harm, "is a bad one." *Burks*, 555 F.3d at 593. Addressing the assertion of liability against an official responsible for processing inmate grievances who dismissed the inmate's grievance regarding his lack of medical treatment as untimely, *Burks* noted that:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done,

more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. Burks's view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right.

*Id.* As *Burks* noted, recognizing a theory of supervisory liability against prison official far-removed from day-to-day prison administration "is just an effort to evade, by indirection, *Monell*'s rule that public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 596.

Or, perhaps more simply stated: liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Nothing in Plaintiff's Amended Complaint provides a basis for finding that either Secretary Green or Warden Campbell personally violated his federal constitutional rights moving along the broad supervisory chain that the Seventh Circuit in *Burks* disfavors. Evidence under oath made by Warden Campbell disposes of the idea that he would be in a position to act deliberately indifferent as the warden of another facility during the relevant time period. Plaintiff has not provided evidence required that either Defendant had knowledge of or was deliberately indifferent to his claims. Lastly, even if the first two *Shaw* factors were sufficiently pleaded, he has no provided evidence showing a causal nexus to his alleged injuries.

### C.  Medical Care

To state a claim for denial of medical care a prisoner must allege facts from which a trier of fact could find that the defendants' acts or failures to act amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As in other Eighth Amendment

8

contexts, there are two components to this test: an objective component, *i.e.*, serious medical need; and a subjective component, *i.e.*, deliberate indifference. *See, e.g., Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995). In other words, as the Fourth Circuit recently stated, "in order to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

## 1. There Must Be A Serious Medical Need

The objective component of this test requires that the plaintiff demonstrate the existence of a serious medical condition. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle*, 429 U.S. at 105; *Johnson*, 145 F.3d at 167; *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). The right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). "[B]ecause society does not expect that prisoners will have unqualified access to health care,' the objective component of an Eighth Amendment claim based on deprivation of medical attention is satisfied only if the medical need is 'serious." *Shakka*, 71 F.3d at 166 (quoting *Hudson*, 503 U.S. at 9). "[A]n injury or condition is 'serious' only if it is 'life-threatening or poses a risk of needless pain or lingering disability if not treated at once.'" *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (minor abrasion not serious) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). A "serious medical need" is one which a physician has found requires treatment or one that is "so obvious that even a lay person would easily recognize the need for a doctor's attention." *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). *Cf. Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987) (intense pain from untreated bullet wound serious); *Sosebee v. Murphy*, 797 F.2d 179, 182

9

(4th Cir. 1986) (jury could infer deliberate indifference from failure to obtain medical care for inmate dying from infection caused by bone caught in throat where symptoms would have been obvious); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (excruciating pain from delayed treatment of broken arm serious), *cert. denied*, 446 U.S. 928 (1980).

In determining whether an alleged deprivation of medical care rises to the level of a constitutional violation, the relevant considerations are the severity of the problem, the potential for harm from delay or denial of medical care, and whether harm actually results. *Burns v. Head Jailor of LaSalle Cnty. Jail*, 576 F. Supp. 618, 620 (N.D. Ill. 1984). It is the necessity of medical treatment, not its desirability, which is determinative. *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) (describing balancing test for need for psychiatric care).

Minor injuries (*e.g.*, those not requiring sutures or pain killers, such as a glass splinter in the hand) do not constitute a serious medical need. *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). Failure to "dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) (but objective indication of injury not needed where inmates were denied medication for pain after beating by officers); *Henderson*, 196 F.3d at 846 (breathing problems, dizziness, chest pains, sinus problems and headaches and loss of energy from second-hand smoke not objectively serious).

Brief delay in providing medical care ordinarily does not constitute a constitutional deprivation. *Andrews v. Glenn*, 768 F. Supp. 668, 670 (C.D. Ill. 1991) (three day delay in treating infected toe); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990) (seven day delay in routine eye exam); *Tyler v. Rapone*, 603 F. Supp. 268, 271-72 (E.D. Pa. 1985) (two week delay in treating

toothache). *But cf. Farrow v. W.*, 320 F.3d 1235, 1246 (11th Cir. 2003) (jury could find deliberate indifference in fifteen month delay in providing dentures); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003) (claim stated against corporate health care provider where policy regarding newly admitted inmates created risk necessary medications would not be received); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987) (officials may not interminably delay treatment based on arbitrary and burdensome procedures).

A single incident of an inmate not receiving prescribed medication does not state a claim, in the absence of an allegation of harm. *Andrews*, 768 F. Supp. at 670. Even occasional negligent failure to provide medication prescribed for a serious medical need does not state a claim of deliberate indifference to a serious medical need. *Nolley v. Cnty. of Erie*, 776 F. Supp. 715, 740 (W.D.N.Y. 1991) (occasional failure to provide prescribed AZT to AIDs patient). *Cf. Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003) (new trial motion properly denied where jury found no serious medical need unmet in case of HIV positive inmate who missed medications on two occasions for several days at a time but who offered no evidence of actual injury or harm). Furthermore, an "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994). *But cf. Taylor v. Barnett*, 105 F. Supp. 2d 483, 488-89 (E.D. Va. 2000) (allegation that change in AIDs medication lacked medical purpose and caused deleterious side-effects and shortened life span stated claim.)

## 2.  Defendants Are Not Liable Unless Deliberate Indifference is Shown

The subjective component of an Eighth Amendment claim related to denial of medical care requires a showing that the defendant acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Deliberate indifference occurs when a defendant "knows of and disregards an

excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson*, 145 F.3d at 168. As most recently stated by the Fourth Circuit, "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 576 (4th Cir. 2001) (allegations insufficient where officers used mace to subdue subject who was acting strangely and resisted attempts to take him to hospital, and where subject later died in hospital from heart trouble). In addition, the Fourth Circuit has stated that

> Deliberate indifference is a very high standard—a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . . To lower this threshold would thrust federal courts into the daily practices of local police departments.

*Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999).

"A prison official is not liable if he 'knew the underlying facts but believed (albeit unreasonably) that the risk to which the facts gave rise was unsubstantial or nonexistent.'" *Johnson,* 145 F.3d at 167 (quoting *Farmer*, 511 U.S. at 844). "[G]eneral knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between these general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168. *White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) ("A claim of deliberate indifference . . . implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice."). Hindsight is not enough. "The law cannot demand that officers be mind readers." *Grayson*, 195 F.3d at 695.

12

It is likewise not enough to allege in a conclusory way that correctional and DPSCS supervisors acted with deliberate indifference. "The presence . . . of a few conclusory terms does not insulate a complaint from dismissal under Rule 12(b) (6) when the facts alleged in the complaint cannot support a finding of deliberate indifference." *Young*, 238 F.3d at 578. Expert testimony that the defendant's medical care was grossly inadequate is not enough, in and of itself, to support an inference that a defendant not only should have perceived a risk but in fact did so, in a case where other facts and circumstances do not create such an inference. *Campbell v. Sikes*, 169 F.3d 1353, 1368 (11th Cir. 1999) (experts' affidavits as to what reasonable psychiatrist should have known did not create a jury question as to what the defendant actually did know).

The plaintiff's disagreement with a prescribed course of treatment does not establish deliberate indifference and therefore does not state a claim. *Peterson v. Davis*, 551 F. Supp. 137, 146 (D. Md. 1982) *aff'd,* 729 F.2d 1453 (4th Cir. 1984). Likewise, claims of medical negligence or disputed questions of medical judgment are not cognizable, because they do not involve deliberate indifference. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (questions of medical judgment are not subject to judicial review); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) *aff'd sub nom. Donlan v. Donlan*, 820 F.2d 1219 (4th Cir. 1987) (negligent delay in providing care for diabetic). Likewise, it is well-established that the "mere failure to treat all medical problems to a prisoner's satisfaction . . . is insufficient to support a claim under § 1983." *Peterson*, 551 F. Supp. at 146. *Accord, Goff v. Bechtold*, 632 F. Supp. 697, 698 (S.D.W. Va. 1986) ("[a] prisoner cannot be the ultimate judge of what medical treatment is necessary or proper in his case"); *Mathis v. Pratt*, 375 F. Supp. 301, 304-05 (N.D. Ill. 1974) (a plaintiff's right "is to medical care—not to the type or scope of medical care which he personally desires"). *See also Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (refusal of medical personnel to provide protease

inhibitor treatment to AIDs patient not deliberate indifference where other adequate treatment being given). While the Amended Complaint alleges a sustained grievous injury it does not sufficiently allege a deprivation of medical care to an objective serious medical need under the circumstances. Moreover, Plaintiff has not evidenced any subjective deliberate indifference to his medical care by Secretary Green or Warden Campbell and therefore his claim fails. Poignantly he has not pointed to any evidence that Secretary Green or Warden Campbell was aware of him at all to meet the subjective element, and even if raised, would be an impossibility as to Warden Campbell who was not warden of RCI for the relevant time period.

### D.  MTCA Failure to Plead Notice

The Plaintiff's Amended Complaint does not plead compliance with the notice provisions of the Maryland Tort Claims Act. As such, the Plaintiff has failed to state a claim in their complaint upon which relief may be granted. *See, e.g., Hansen v. City of Laurel*, 420 Md. 670, 694 (2011) (holding that a plaintiff must not only satisfy the notice requirement, but also plead such satisfaction in the complaint and, if omitted, it is subject to a motion to dismiss for failure to state a claim upon which relief can be granted under LGTCA).[2] Notably, the Plaintiff has had the opportunity to correct this deficiency in the Amended Complaint by pleading compliance with the notice provisions of the MTCA. Accordingly, the claims of negligence in Plaintiff's Amended Complaint should be dismissed with prejudice.

### E.  Supplemental Jurisdiction over State Claims

Where the district court grants summary judgment in favor of the defendants on a federal civil rights claim, it may decline to exercise supplemental jurisdiction over state law claims arising

---

[2] LOCAL GOVERNMENT TORT CLAIMS ACT

out of the same facts. *E.g.,* 28 U.S.C. § 1367(c) (3); *Ashann-Ra v. Com. of Va.*, 112 F. Supp. 2d 559, 563 (W.D. Va. 2000); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Because the federal claims pleaded are not substantial enough to invoke federal jurisdiction, they will not support supplemental jurisdiction over state law claims. *See Ridenour v. Andrews Fed. Credit Union*, 897 F.2d 715, 722 (4th Cir. 1990). Exceptions to this principle may be followed if there is a statute of limitations problem or if there has already been significant investment of time and energy in the case that makes dismissal inequitable. *See United Mine Workers of Am.*, 383 U.S. at 726. Plaintiff's case does not merit such an exception and this Court should exercise its discretion over the state claims of negligence.

### F. Defendants Secretary Green and Warden Campbell are immune under the Eleventh Amendment from suit in federal court.

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is likewise well-established that the Eleventh Amendment bars federal court actions against the agencies and departments of the state, as well as the state itself. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100-01; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

Also barred by the Eleventh Amendment are claims brought against state employees in their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985). Regarding Plaintiff's suit against Secretary Green and Warden Campbell in their official capacity,

> the state is the real, substantial party in interest. . . . Thus, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." . . . And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief. . . .

*Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02 (citations omitted). Therefore, Secretary Green and Warden Campbell are immune from suit in federal court for any claims brought against them in their official capacities.

### G.  Secretary Green and Warden Campbell are entitled to qualified immunity

Secretary Green and Warden Campbell are entitled to summary judgment on the basis of qualified immunity. Plaintiff's complaint fails to plead that either Defendant violated any clearly established constitutional right of which a reasonable public official should have known. They are entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Turner v. Dammon*, 848 F.2d 440, 443 (4th Cir. 1988); *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir. 1988). Under the standard articulated in *Harlow*, whether prison officials are entitled to summary judgment based on qualified immunity turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken.'" *Harlow v. Fitzgerald*, 457 U.S. at 818. Indeed, in *White v. Pauley*, _U.S._, 137 S. Ct. 548 (2017), the Supreme Court recently confirmed the importance of the defense of qualified immunity, stating that qualified immunity protects all but those who knowingly violate the law. (*quoting Mullenix v. Luna,* 577 U.S., at _, 136 S.Ct., at 308). Further, in *White v. Pauly*, _U.S._, 137 S. Ct. at 552, the Supreme Court emphatically confirmed once again that clearly established law for purposes of qualified immunity cannot be defined at an abstract level. The facts must be "particularized" to the facts of each case. *Id.*, quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

Once the defense of qualified immunity is raised, the burden is on Plaintiff to show that the defendants' conduct violated the law and that such law was clearly established when the alleged violation occurred.  *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir.), *cert. denied*, 510 U.S. 996

(1993).  The Plaintiff must demonstrate that "in light of pre-existing law, the unlawfulness of the official action was apparent." *Bryant*, 994 F.2d at 1086, *citing Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir.), *cert. denied*, 506 U.S. 905 (1992). The Plaintiff cannot meet this burden. Given the facts pleaded and the law as set forth above, even if Plaintiff had stated a claim, Secretary Green and Warden Campbell did not violate "clearly established" legal rules in any way. Plaintiff does not sufficiently plead any unlawful conduct by Secretary Green and or that he was aware of any such violation. Moreover, Plaintiff's unadorned allegation that Warden Campbell did likewise is unable to establish such a violation for he was not warden at RCI during the relevant time period.

The Amended Complaint fails to sufficiently plead any unreasonable or unlawful actions by Secretary Green and Warden Campbell. The conclusory and speculative assertion by Plaintiff that they were negligent, negligent in hiring or supervision, or were deliberately indifferent does not amount to a constitutional violation. With no clearly established law having been violated – much less by these Defendants – they are entitled to qualified immunity. *Winfield* 106 F.3d at 532-33.

## V.    CONCLUSION

Defendants, Secretary Robert L. Green and Warden Casey M. Campbell, respectfully request that this Court dismiss the case, or that summary judgment be entered in their favor.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

_____/s/_____
DAVID W. RYDEN
Assistant Attorney General
Federal Bar No. 21204

17

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6598 (Telephone)
(410) 576-6880 (Telefax)
E-mail: dryden@oag.state.md.us

*Attorneys for Defendants Secretary Robert L.*
*Green and Warden Casey M. Campbell*